## WOOLLEY v. DOWSE et al.

No. 5043.   Decided March 6, 1935.   (41 P. [2d] 709.)

*J. D. Skeen* and *E. J. Skeen,* both of Salt Lake City, for appellant.

*Fabian & Clendenin* and *D. Howe Moffat,* all of Salt Lake City, for respondents.

WOLFE, Justice.

This action was brought on a note for $650 executed by the Bentons to the plaintiff and to foreclose a mortgage on certain real estate and 16¼ shares of stock in the Thompson Ditch Company given to secure said note. The Thompsons

made answer, regarding which the only material part to this appeal is that they denied the right of the plaintiff to foreclose on the 16¼ shares of water.

The question is as to whether the plaintiff had the right to foreclose on the water stock as against the Thompsons; it having been mortgaged to him by the Bentons previous to the purchase by Edgar Thompson. This depends upon whether Edgar Thompson under the facts as hereinafter set out is a bona fide purchaser for value of said 16¼ shares of said stock.

The abstract of title offered in evidence as Exhibit F, but not received, shows that H. Smith Woolley, Jr., in December, 1918, received title to the real estate described in the Benton mortgage to the plaintiff, which real estate we shall for brevity hereinafter call the Benton tract. The stock certificate book of the Thompson Ditch Company offered in evidence as Exhibit D, but not received, shows that ten days later, on December 27, 1918, stock certificate No. 53 for 16¼ shares of water in the Thompson Ditch Company was issued to H. Smith Woolley. While apparently in his possession, there was indorsed on said certificate the following, "This certificate of water belongs to and is a part of the following described property," setting out the description of the Benton tract later covered by the mortgage. Consequently, on December 27, 1918, both the certificate to the water stock and the land were in the possession of H. Smith Woolley. The abstract of title further shows a warranty deed from H. Smith Woolley to the Bentons dated June 22, 1920, recorded August 22, 1921, covering the Benton tract. In another certificate book of the Thompson Ditch Company, marked Exhibit E but not admitted, it is shown that certificate No. 68 for 16¼ shares of stock in the Thompson Ditch Company was issued to R. L. Benton on December 3, 1924. This certificate No. 68 was derived from the cancellation of certificate No. 53; H. Smith Woolley evidently indorsing and delivering certificate No. 53 to R. L. Benton, whereupon the latter turned the certificate into the Thompson Ditch Com-

pany and received certificate No. 68. Certificate No. 68 had no indorsement as to the water belonging to any land. About September 9, 1926, defendant Edgar Thompson paid R. L. Benton $175, whereupon Benton indorsed and delivered to Thompson the certificate No. 68 for 16¼ shares of stock. Certificate No. 68 was surrendered by Thompson to the Ditch Company, and certificate No. 77 issued in lieu thereof to him and to J. M. Thompson jointly.

At the time that certificate No. 68 was issued to R. L. Benton, Norval Stewart was secretary, and Edgar Thompson was president, of the Thompson Ditch Company. Certificate No. 68 was signed by Stewart's son-in-law, as per the initials of the son-in-law. This certificate was also signed by Edgar Thompson, one of the defendants, as president of the corporation.

On the 1st day of August, 1921, more than five years before Thompson bought certificate No. 68, the Bentons executed and delivered to Ralf R. Woolley, the plaintiff, the mortgage which this suit is brought to foreclose. In the same mortgage which mortgaged the Benton tract to the plaintiff, the following appears after the description of the real estate as part of the property mortgaged, "Together with all water and water rights thereunto belonging," and being particularly described as 16¼ shares in the Thompson Ditch Company.

Woolley, the mortgagee, evidently did not get possession of the certificate covering the 16¼ shares of the stock of the Thompson Ditch Company on which he had a mortgage, nor did he cause to be placed on the books of the Thompson Ditch Company any notation of his interest in said stock certificate. The records therefore show a chain of title and interest in the Benton tract going from H. Smith Woolley to the Bentons with the mortgage to Ralf R. Woolley, the plaintiff. The stock book records of the Thompson Ditch Company show a chain of title to the 16¼ shares of stock from H. Smith Wolley through the Bentons to the Thompsons. The land, in a

sense, went down one channel and the stock down another after both resided in the Bentons.

There appears to be no conflict in the facts as above stated. We shall treat the case, for the purpose of determining the law applicable thereto, as if all of the offered exhibits had been received in evidence. If it is found that with all of the exhibits received in evidence plaintiff could not prevail, then the rejection of these exhibits could not be prejudicial error. As a matter of fact, the case has been submitted to this court for determination of the legal questions on the theory that all the facts which could be gathered from exhibits which were rejected are before the court.

Plaintiff does not contend that he should not have reduced the stock certificate to his possession, but claims that Edgar and J. M. Thompson were not bona fide purchasers for value, because Edgar Thompson, the purchaser of the 16¼ shares of stock (stock certificate No. 77 was made in the names of Edgar and J. M. Thompson jointly), had actual or constructive notice of the interest of the plaintiff. From the evidence it seems clear that the water at the time of the purchase of stock certificate No. 68 by Thompson was not used on the Benton tract, and had not been for more than twenty years prior thereto. There could be no claim therefore that Thompson had actual notice that the water represented by the 16¼ shares of stock in the Thompson Ditch Company was in fact appurtenant to the Benton tract, because as a matter of fact it was not appurtenant. But it is contended that Thompson had either actual or constructive notice of the fact that the stock certificate was mortgaged by the Bentons at the same time as the Benton tract.

The water represented by the 16¼ shares of stock, not being in fact appurtenant to the land, we must consider it as if it were property separate from the land itself, and when included in the mortgage it must be considered as if it were some chattel that had been mortgaged by the same instrument that mortgaged the real estate. In spite of this it is claimed that Edgar Thompson should be charged with notice

that the water rights represented by the 16¼ shares of stock were mortgaged to the plaintiff on August 1, 1921. This claim rests upon the contention that Edgar Thompson was president of the Thompson Ditch Company on September 9, 1926, when he purchased certificate No. 68; also president when certificate No. 53 was turned in by Benton on December 3, 1924, and certificate No. 68 issued therefor, and that, being president, he should have taken notice of what was on certificate No. 53, including the indorsement placed thereon while the same was in the possession of H. Smith Woolley; that being charged with notice of that indorsement, he is therefore charged with notice that the water went with the Benton tract, and that, in consequence, the duty was placed upon him to run down the record of title in the county recorder's office to the Benton tract to see if the water represented by the 16¼ shares had been mortgaged or sold by the Bentons through some instrument on the records of the real estate.

There is nothing in the record that shows that Thompson had any actual knowledge of this indorsement on certificate No. 53, but the plaintiff contends that he had constructive notice because he was charged with notice of what was on that certificate, for the reason that as president he had the duty before signing certificate No. 68 to see what was on certificate No. 53. Assuming for the purpose of this case, but not deciding, that the president of a company, whose duty it is to sign stock certificates as such president, has the duty to determine whether the certificate surrendered is properly indorsed, and that the new certificate is for no greater number of shares than the holder of the surrendered certificate is entitled to by virtue of his being the apparent owner of the surrendered certificate, does it follow that such president must also take notice of any writings contained on the certificate extraneous to those contents of the certificate which are necessary for him to know in order to perform such assumed duties? We think not. Furthermore, if it were shown that he actually had notice of the indorsement

on certificate No. 53, that knowledge would not charge him with the duty of running down the title record in the county recorder's office of the Benton tract to which the indorsement of that certificate referred. The water represented by the certificate was, as a matter of fact, not appurtenant to or used on the Benton tract. The fact that one who buys water stock actually knew that a former certificate had stated that the water represented by the certificate belonged to a certain tract of land, when he knows that no water was being or had been used on that land, would not charge him with a duty of searching through the record of the chain of title of that land to see whether any of the instruments on the county recorder's record dealt with that water. The water right not in fact appurtenant to land must be treated, as far as the purchaser is concerned, as if it were properly entirely unconnected with the land. It is, therefore, largely in the same category as a chattel. If one who purchases a chattel from the person who holds a bill of sale or other indicia of title showing ownership knows that some time in the past some other indicia of title to that chattel, while it was held by another party, recited that the chattel was used or belonged to a certain piece of land, he would not be charged, at the time he purchased that chattel, because of the knowledge of such recitation, with the duty of examining the record of the chain of title to the real estate to which that former indicia of title referred to determine whether any recorded instrument in such chain of title of the real estate dealt with that chattel. Because some owner some time in the past made a written statement that water belonged to certain land when in fact it was not appurtenant to said land would not require future intending purchasers who knew of such statement to examine every intervening recorded instrument concerning the real estate in order to determine whether such instrument conveyed or mortgaged the stock representing the water. They may rely on the stock record unless they have actual knowledge of the fact that the stock has been mortgaged, pledged, or disposed of, or unless there

is some other circumstance which would charge them with notice other than the mere knowledge that some previous owner declared it to be appurtenant.

It follows from what has been said above that Edgar Thompson was a bona fide purchaser for value of stock certificate No. 68 from R. L. Benton. This being true, the court would have to come to the same result as it did come to had it admitted Exhibit C (stock certificate No. 53) and Exhibits D and E, being stock certificate books of the Thompson Ditch Company, and Exhibit F, being the abstract of title. As a practical matter, it would have been better for the court to have admitted these exhibits on the theory that, where the admissibility of evidence depends upon the later solution of a point of law, the court had better admit the exhibits even though it ultimately determines the point of law in such a way as to make the exhibits immaterial, rather than to find later that it has wrongly excluded the exhibits because the determination of the legal question has made them material.

In this case, as stated above, we have considered the legal questions as if we had all the evidence before us, and find that the lower court would have had to arrive at the same result had it all been admitted.

The point is made by the appellant that the son-in-law of Norval Stewart had no authority to sign stock certificate No. 68 as secretary, and that, therefore, stock certificate No. 68 was not properly issued. It is difficult to see how the plaintiff could raise this issue. R. L. Benton was entitled to a certificate in place of certificate No. 53 which he held. If he was satisfied with certificate No. 68, and his purchaser, Edgar Thompson, was also satisfied with it, and if it was finally surrendered and a new certificate, No. 77, was issued to Thompson representing the water right, who was injured by this irregularity, if it was an irregularity? The whole thing was cured when certificate No. 77, which took the place of No. 68, was properly signed by the secretary and president of the company.

This disposes of all the assignments of error.

The judgment is affirmed; costs to the respondents.

ELIAS HANSEN, C. J., EPHRAIM HANSON, and FOLLAND, JJ., and ABE W. TURNER, District Judge, concur.